IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CARLA LOUISE CAVACO,                )    CIVIL NO. 09-00586 SOM/BMK
                                    )
          Plaintiff,                )
                                    )    ORDER GRANTING IN PART AND
     vs.                            )    DENYING IN PART MOTION FOR
                                    )    SUMMARY JUDGEMENT
MORTGAGE ELECTRONIC                 )
REGISTRATION SYSTEMS, INC.;         )
WILSHIRE CREDIT CORPORATION;        )
and HSBC BANK USA, NATIONAL         )
ASSOCIATION AS TRUSTEE FOR          )
THE ELLINGTON TRUST SERIES          )
2007-1.                             )
                                    )
          Defendants.               )
_____)

ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGEMENT

I.        INTRODUCTION.

          This case arises out of a mortgage refinancing.

Defendants have moved for summary judgment on Plaintiff Carla

Louise Cavaco's First Amended Complaint.  As set forth below, the

motion is granted in part and denied in part, leaving for further

adjudication only the Truth in Lending Act rescission claim

asserted in Count 1 of the First Amended Complaint.

II.       FACTUAL BACKGROUND.

          In January 2007, Cavaco obtained a $352,000 loan from

Fremont Investment & Loan.  This loan refinanced Cavaco's

previous loan and provided Cavaco with just under $107,000 in

cash.  See Declaration of Justin Wilson ¶ 9, Feb. 23, 2011, ECF

No. 28; ECF No. 28-6.

As part of the loan, Cavaco executed and delivered a $352,000 note dated January 19, 2007, to Fremont. <u>See</u> EFC No. 28-1. Though various assignments, the note has been assigned to HSBC Bank USA, National Association as Trustee for the Ellington Trust Series 2007-1. The orginal note is being physically held by HSBC's third-party custodian, Wells Fargo Bank, N.A. <u>See</u> Declaration of Justin Wilson ¶ 3, Feb. 23, 2011, ECF No. 28.

To secure the note, Cavaco executed and delivered a mortgage to Fremont on January 19, 2007. The mortgage was recorded in the State of Hawaii Bureau of Conveyances on January 25, 2007, as Document No. 2007-014335. Under the terms of the mortgage, Mortgage Electronic Registration Systems, Inc. ("MERS"), was designated the nominee for Fremont. The mortgage states that MERS is the "mortgagee" for purposes of the mortgage. <u>See</u> 28-2.

Cavaco says that, at closing, she was given no opportunity to review any of the loan documents or ask questions about the documents. She says that she was told by Fremont's representative that the loan documents were in order and that she had to sign right away. <u>See</u> Aff. of Carla Louise Cavaco ¶¶ 13-14, Mar. 21, 2011, ECF No. 35-1. Cavaco says that Fremont's representative flipped the documents to wherever a signature or initials were necessary and instructed her to sign or initial. <u>Id.</u> ¶ 15.

On or about September 20, 2009, MERS assigned Cavaco's mortgage to HSBC. This assignment of Cavaco's mortgage was recorded in the State of Hawaii Bureau of Conveyances on September 30, 2009, as Document Number 2009-149718. See Corporate Assignment of Mortgage/Deed of Trust, ECF No. 28-3. Cavaco says that she was not notified of this transfer. See Cavaco Aff. ¶ 3.

Defendants say that, on January 16, 2007, Fremont sent Cavaco a certified letter containing various documents pertaining to her loan, including two copies of the Truth in Lending Disclosure Statement, a Good Faith Estimate of Settlement Charges, a Real Estate Settlement Procedures Act Disclosure Statement, Adjustable Rate Mortgage Disclosures, an Appraisal Disclosure, a Choice of Insurance Notice, a Loan Transaction Fees Notice, a Credit Score Notice, a Credit Score Disclosure, and a USA Patriot Act Disclosure. See Wilson Decl. ¶¶ 8, 10; ECF No. 28-5. Cavaco admits receiving some of the unsigned mortgage documents, but she says she did not receive those documents until a week after she signed the note and mortgage. See Cavaco Aff. ¶ 18.

Also on January 19, 2007, Cavaco signed a Notice of Right to Cancel. Immediately above her signature on that document was an acknowledgment that she had "received Two (2) copies of the Notice of Right to Cancel" on that date. See ECF

No. 28-7.  On that same day, Cavaco signed an acknowledgment that
she had received a copy of the TILA Disclosure Statement.  See
ECF No. 28-8.  Cavaco, however, complains that she did not
receive signed copies of these documents.  See Cavaco Aff. ¶ 4.
It is unclear whether Cavaco received unsigned copies of these
documents.  See id. (stating that, about a week after she signed
the documents, she "received unsigned copies of some of the
mortgage and note documents in the mail").  If Cavaco is
complaining that the documents she received failed to contain her
signature, she cites no legal authority requiring a lender to
provide copies signed by the borrower.

On or about March 9, 2009, the loan's servicing agent,
Wilshire Credit Corporation, sent Cavaco a Notice of Default.
See ECF No. 28-10.  The notice told Cavaco that was $4,992.46 in
arrears and that, if the default was not timely cured, the
creditor might initiate foreclosure proceedings.  Id.

On September 23, 2009, three days after Cavaco's loan
was assigned to HSBC, HSBC executed a Notice of Mortgagee's
Intention to Foreclosure Under Power of Sale.  This document was
subsequently filed in the State of Hawaii Bureau of Conveyances
on October 7, 2009, as Document Number 2009-15374.  See Wilson
Decl. ¶ 16; ECF No. 28-11.  The notice set a public sale of
Cavaco's mortgaged property for October 30, 2009.  Id.

On December 11, 2009, Cavaco filed the Complaint in this matter.  See ECF No. 1.

On or about February 27, 2010, Bank of America Home Loans notified Cavaco that, effective March 1, 2010, it would be the servicing agent for her loan.  See ECF No. 28-9.

On April 22, 2010, Cavaco settled with Fremont and stipulated to its dismissal with prejudice.  See Stipulation to Dismiss With Prejudice Defendant Fremont Investment & Loan, Apr. 22, 2010, ECF No. 8.

On June 30, 2010, Cavaco filed the First Amended Complaint in this matter.  See ECF No. 14.  The First Amended Complaint names Defendants MERS, Wilshire, and HSBC, but does not name Fremont as a Defendant.

III.     STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d 975,

988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u> 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." <u>Porter v. Cal. Dep't of Corr.,</u> 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.,</u> 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

IV.     <u>ANALYSIS.</u>

    A.     <u>Counts 1 and 11--TILA Rescission and Recoupment.</u>

        1.     <u>Rescission Claim.</u>

Based on Fremont's alleged failure to provide full disclosures of the loan documents, Count 1 of the First Amended Complaint asserts a violation of the Truth in Lending Act, 15

U.S.C. § 1602, et seq..  Specifically, Count 1 seeks to rescind the loan under 15 U.S.C. § 1635(a).

Under 15 U.S.C. § 1635(a), a borrower has a right to rescind a consumer credit transaction that provides for a security interest in any property used as the borrower's principal dwelling.  The borrower has "until midnight of the third business day following consummation of the transaction or the delivery of the information and rescission forms" to exercise this right.  Id.  However, when a lender fails to tell a borrower about the borrower's right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated.  12 C.F.R. § 226.23(a)(3); Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989).  Even a purely technical violation of TILA's disclosure provisions, including the failure to provide a borrower with two copies of the notice that includes the correct date the rescission period expires, extends the duration of the right to rescind for three years.  See Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

> TILA defines "material disclosures" as disclosures
>
> of the annual percentage rate, the method of
> determining the finance charge and the
> balance upon which a finance charge will be
> imposed, the amount of the finance charge,
> the amount to be financed, the total of
> payments, the number and amount of payments,

8

> the due dates or periods of payments
> scheduled to repay the indebtedness, and the
> disclosures required by section 1639(a) of
> this title.

15 U.S.C. § 1602(u).

To the extent Cavaco seeks in Count 11 of the First Amended Complaint to toll § 1635(a)'s limitation period for exercising TILA rescission rights, summary judgment is granted in favor of Defendants. Because the limitation period for rescission claims under TILA is a statute of repose, equitable tolling is inapplicable. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411–13 (1998); Uy v. Wells Fargo Bank, N.A., 2011 WL 1235590, *7 (D. Haw. Mar. 28, 2011) ("Equitable tolling does not apply to rescission claims under TILA."). If Cavaco did indeed receive the required disclosures, her TILA rescission claim may be barred by the three-day limitation period. For purposes of this motion, however, because Cavaco raises a genuine issue of fact as to whether she received the required disclosures, this court applies the three-year limitation period.

Defendants seek summary judgment on the TILA rescission claim asserted in Count 1, arguing that Cavaco's signed acknowledgment of receipt of two copies of the TILA disclosures creates a "rebuttable presumption" that the disclosures were made to her. See 15 U.S.C. § 1635(c) ("Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information,

9

forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof."). Cavaco's affidavit creates a genuine issue of fact as to whether she received copies of the TILA disclosures, as Cavaco denies receipt and describes her loan closing procedure as having given her no time to read what she was signing, implying that she did not know she was acknowledging receipt of the TILA disclosures. See Cavaco Aff. ¶¶ 4, 13-15; Rodrigues v. Newport Lending Corp., 2010 WL 4960065, *6 (D. Haw. Nov. 29, 2010) (holding that plaintiffs' declaration denying receipt of TILA disclosures was sufficient to create a genuine issue of fact concerning such receipt despite the rebuttable presumption of delivery based on plaintiffs' signed acknowledgment of receipt). Accordingly, to the extent Defendants seek summary judgment based on the rebuttable presumption of receipt, summary judgment on Count 1 is denied.

As an additional ground for summary judgment on the TILA rescission claim, Defendants argue that Cavaco has not pled and does not have the ability to tender back the proceeds of the loan. To the extent Defendants seek summary judgment based on the argument that the Complaint does not plead an ability to tender the proceeds of the loan back to the banks, this court has previously rejected that argument. See Augustin v. PNC Financial Servs. Group, 2010 WL 1507975, *8 (D. Haw., Apr. 15, 2010). With

10

respect to the argument that summary judgment should be granted on the TILA rescission claim because Cavaco cannot repay the loan proceeds, the court recognizes that it may condition the obligation to release the security interest for the loan on Cavaco's tender to the lender of the amount owed or property equivalent to the debt.  TILA requires a creditor to return any money or property to the borrower and terminate the security interest within twenty days of receiving a notice of rescission from a borrower.  See 15 U.S.C. § 1635(b).  Once that happens, the borrower typically must tender the loan or the property.  Id. However, a court has discretion to delay a lender's actions until the borrower tenders the amount owed or provides an equivalent property to the lender. Whether a decree of rescission should be conditional depends on "the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act."  Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003) (citations omitted).

In Yamamoto, the Ninth Circuit said that, if a borrower cannot comply with his or her rescission obligation, the court may deny rescission.  Id. at 1173.  The next year, in 2004, Official Staff Commentary to 12 C.F.R. § 226.23 was added to clarify that, when a court modifies the rescission procedures,

the consumer's right to rescind and to have the loan amount adjusted are not affected.  <u>See</u> Official Staff Commentary on Regulation Z for § 226.23(d)(4); Elizabeth Renuart and Kathleen Keest, <u>Truth in Lending</u> § 6.7.2.3 (Nat'l Consumer Law Center, 6th ed. 2007).

Cavaco presents no evidence that she has the ability to tender an appropriate amount back to the lender.  Under these circumstances, the court exercises its discretion and conditions the lender's obligation to release the security interest for the loan on Cavaco's tender to the lender of the adjusted amount she owes.  <u>See Beazie v. Amerifund Fin., Inc.</u>, 2011 WL 1437888, *7 (D. Haw. Apr. 14, 2011) (discussing the court's discretion to condition rescission on the unwinding of the loan, <u>e.g.</u>, borrower's tender of the loan proceeds back to the lender).  In <u>Beazie</u>, the court granted summary judgment to the lender when the borrower was unable to unwind the loan.  <u>Id.</u>  This court orders Cavaco and HSBC to meet and confer about the TILA rescission claim in keeping with the analysis in <u>Beazie</u>.

2.  <u>Recoupment Claim.</u>

Paragraph 45 of the First Amended Complaint seeks recoupment under 15 U.S.C. § 1640(a) and (e) based on the alleged TILA disclosure violations.  The Supreme Court has explained that "recoupment" is a "defense arising out of some feature of the transaction upon which plaintiff's action is grounded."  <u>Beach v.</u>

Ocwen Fed. Bank, 523 U.S. 410, 415 (1998). This means that, even if a borrower does not bring an affirmative claim for rescission of a loan based on alleged TILA violations, if a bank tries to foreclose on the borrower's property, the borrower may seek rescission of the loan based on TILA disclosure violations as a "defense" to a foreclosure action. Id. Any such defense must be asserted within § 1635(a)'s limitation period for rescinding loans. Id. at 419. A borrower's recoupment claim asserting recoupment in the nature of damages, however, survives the TILA's one-year limitation for damages. See Beach, 523 U.S. at 415.

Cavaco's First Amended Complaint seeks recoupment in the nature of damages, rather than recoupment in the nature of rescission. At the hearing on the motion, the court asked Cavaco to identify the legal bases of the recoupment claim. Cavaco initially relied on § 1640(a) as justification for recoupment damages. However, § 1640(a) provides for damages for TILA violations, not recoupment, and therefore does not support Cavaco's recoupment claim.

Cavaco also relied on § 1640(e) for recoupment in the nature of damages. That section provides in pertinent part:

> This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

15 U.S.C. § 1640(e) (emphasis added). A recoupment claim under
§ 1640(e) requires the plaintiff to show that "(1) the TILA
violation and the debt are products of the same transaction,
(2) the debtor asserts the claim as a defense, and (3) the main
action is timely." Augustin v. PNC Fin. Serv. Group, 707 F.
Supp. 2d 1080, 1088 n.2 (D. Haw. 2010) (quoting Moor v. Travelers
Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986)). This court has
held that recoupment of damages under § 1640(e) is unavailable
when, as here, a lender is using a nonjudicial foreclosure
process, reasoning that a nonjudicial foreclosure process does
not involve an "action" to collect a debt, which § 1640(e)
defines as a court proceeding. See Araki v. One West Bank FSB,
2010 WL 5625969, *6 (D. Haw. Sept. 8, 2010). This court agrees
that HSBC's nonjudicial foreclosure proceeding against Cavaco's
property does not amount to an "action" for purposes of
§ 1640(e). Accordingly, recoupment of damages is unavailable
under § 1640(e).

Because Cavaco fails to identify any legal authority
supporting her TILA recoupment claim, summary judgment is granted
in favor of Defendants on that claim.

B.    Counts 2 and 11--TILA Damage Claim.

Count 2 seeks damages under TILA based on Defendants'
alleged failure to provide TILA disclosures. Defendants seek
summary judgment on the TILA damage claim, arguing that this suit

14

was not brought within the one-year limitation period that began when the loan was consummated.  This court agrees and grants summary judgment against Cavaco on Count 2, as the limitation period for such a claim is one year from the date of the consummation of the loan.  See 15 U.S.C. § 1640(e); King v. California, 784 F.2d 910, 915 (9th Cir. 1986) (when a TILA violation is based on an insufficient disclosure, the limitation period generally "starts at the consummation of the [loan] transaction"); see also Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996) (holding that, when a lender fails to comply with TILA's initial disclosure requirements, a borrower has one year from obtaining the loan to file suit).  Cavaco's loan was consummated in January 2007, and the Complaint was not filed until December 2009.  In Count 11 of the First Amended Complaint, Cavaco asserts that the limitation period should be equitably tolled.  However, on this motion for summary judgment, Cavaco makes no such argument and fails to introduce any evidence supporting equitable tolling.  Summary judgment is therefore granted in favor of Defendants on Count 2.

     C.   Count 3--RESPA.

Count 3 of the First Amended Complaint asserts a violation of the Real Estate Settlement Procedures Act ("RESPA").  Specifically, Cavaco asserts that RESPA was violated when Defendants failed to provide her with a signed and dated Good

Faith Estimate.  RESPA discusses good faith estimates at 12

U.S.C. § 2604(c) and its implementing regulation, 24 C.F.R.

§ 3500.7.  Cavaco specifically asserts violations of § 3500.7(b).

See First Amended Complaint ¶¶ 50-51.

Defendants argue that Cavaco received the good faith

estimate and did not plead actual pecuniary damages.  Defendants

are entitled to summary judgment on a more fundamental level,

however, as there is no private right of action under RESPA for

violations of 12 U.S.C. § 2604(c) or its implementing regulation,

24 C.F.R. § 3500.7.  Instead, TILA provides the private right of

action for a lender's failure to timely provide those

disclosures.  See Collins v. FMHA-USDA, 105 F.3d 1366, 1368 (11th

Cir. 1997) ("there is no private civil action for a violation of

12 U.S.C. § 2604(c), or any regulations relating to it"); accord

Araki v. One West Bank, FSB, 2010 WL 5625969, *8 (D. Haw. Sept.

8, 2010) (Seabright, J.); Valdez v. Flexpoint Funding Corp., 2010

WL 3001922, *10 (D. Haw. July 30, 2010) (Kay, J.).  In light of

Cavaco's indication that she did not need additional time to

brief the matter, summary judgment is granted in favor of

Defendants on the § 2604(c) RESPA claim asserted in Count 3

pursuant to Rule 56(f)(2) of the Federal Rules of Civil

Procedure.

Paragraph 52 of the First Amended Complaint asserts

that excessive closing costs were charged in violation of 12

16

U.S.C. § 2607.  Defendants argue that this RESPA claim is barred

by the one-year limitation period stated in § 2614.  Because

Cavaco did not file her Complaint within one year of the alleged

violation of § 2607, and because Cavaco fails to oppose dismissal

on this ground, the motion is granted with respect to the § 2607

RESPA claim asserted in Count 3.  See 12 U.S.C. § 2614.

     D.   Count 4--Chapter 480 Violations.

Count 4 of the First Amended Complaint asserts

violations of section 480-2(a) of Hawaii Revised Statutes, which

prohibits "unfair and deceptive acts or practices in the conduct

of any trade or commerce."[1]  Specifically, Paragraph 57 of the

First Amended Complaint alleges violations based on the

following:

> 1. Targeting financially unsophisticated and
> otherwise vulnerable consumers for
> inappropriate credit products.
>
> 2. Failing to adequately disclose the true
> costs and risks of the subject loan and its
> inappropriateness for Plaintiff.
>
> 3. Making a refinance loan that resulted in
> little net economic benefit to Plaintiff with
> the primary objective of generating fees and
> economic benefits to said Defendants.
>
> 4. Making the loan based on the value of the
> collateral, without regard to Plaintiff's
> ability to repay the loan.

---

[1]Count 4 also asserts violations of section 481A-3, which is
inapplicable as it prohibits deceptive trade practices relating
to intellectual property.

5. Failing to provide Plaintiff with a timely
Good Faith Estimate "GFE".

        6. Attempting to deprive Plaintiff of her
legal right to cancel the loan.

        To the extent Count 4 seeks damages under section 480-13 of the Hawaii Revised Statutes, Defendants are entitled to summary judgment.  Cavaco asserts that Fremont committed the bad acts forming the grounds for her unfair and deceptive trade practice claims.  However, Cavaco settled with Fremont, the original lender and alleged wrongdoer, and is now seeking to hold others liable for Fremont's actions.  Chapter 480 does not support Cavaco's damage claim against persons or companies that did not commit the allegedly wrongful acts.  A section 480-13 damage claim based on violations of section 480-2 may only be asserted against the wrongdoer.  See Araki v. One West Bank, 2010 WL 5625969, *8 (D. Haw. Sept. 8, 2010) (holding that an assignee of a loan is not liable for the original lender's alleged violations of section 480-2).

        To the extent Cavaco seeks rescission of her loan pursuant to section 480-12 of the Hawaii Revised Statutes, summary judgment is also granted in favor of Defendants.  To the extent the chapter 480 claims are based on violations of TILA (grounds 2 and 5: failure to provide disclosures; and ground 6: not honoring rescission request), summary judgment is granted on TILA preemption grounds.  See Williams v. Rickard, 2011 WL

578798, *8 (D. Haw. Feb. 9, 2011) (ruling that, to the extent plaintiff's chapter 480 claims are premised on TILA violations, they are preempted by TILA).

With respect to the remaining section 480-12 rescission claims based on the targeting of unsophisticated consumers (ground 1), making a loan with little economic benefit to Cavaco (ground 3), and making a loan based on the value of collateral instead of on Cavaco's ability to pay (ground 4), Defendants argue that no facts support these claims. At the hearing, the court asked Cavaco to identify evidence in the record supporting these claims. The only evidence supporting these claims identified by Cavaco was the original lender's alleged overstatement of her income on her loan application and concealment of what she was signing during the closing of the loan. These facts are unrelated to the stated bases of her chapter 480 rescission claims. Accordingly, because Cavaco fails to provide any evidence supporting any of these claims, Defendants are entitled to summary judgment on them.

E.   Count 5--Fraud.

The First Amended Complaint alleges that the remaining Defendants are liable for the fraud committed by Fremont. Cavaco alleges that Fremont allegedly falsely represented 1) the costs of the loan, 2) Cavaco's income on her loan application, and 3) the nature of the documents she was signing at the closing of

her loan.  The Supreme Court of Hawaii has stated that "the elements of fraud are: 1) false representations made by the defendant, 2) with knowledge of their falsity (or without knowledge of their truth or falsity), 3) in contemplation of plaintiff's reliance upon them, and 4) plaintiff's detrimental reliance."  Fisher v. Grove Farm Co., 123 Haw. 82, 103, 230 P.3d 382, 403 (2009).

The fraud claims asserted against the remaining Defendants fail because there is no dispute that the alleged fraudulent conduct was committed by Fremont as the original lender, not by the remaining Defendants who are subsequent assignees or servicers of Cavaco's loan.  Cavaco cites no valid authority supporting her contention that persons and companies that did not actually commit the alleged fraud can be held liable for the fraud.  The court is not persuaded by Cavaco's argument that TILA's provision for assignee liability, 15 U.S.C. § 1641(e), extends that liability to causes of action beyond TILA.

> F.   Counts 6 and 7--Civil Conspiracy and Aiding & Abetting.

Counts 6 and 7 assert civil conspiracy and aiding and abetting.  Summary judgment is granted in favor of Defendants on these claims.  Civil conspiracy does not on its own constitute a claim for relief.  See Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995); accord O'Phelan v. Lee Loy, 2011 WL 719053

(D. Haw. Feb. 18, 2011); Sarmiento v. Bank of New York Mellon, 2011 WL 884457, *5 (D. Haw. Mar. 10, 2011) (holding that a cause of action for "civil conspiracy" is a theory of potential liability that is derivative of other wrongs; dismissing civil conspiracy claim when other claims are dismissed); Gamiao v. Bank of Am., 2011 WL 839757 (D. Haw. Mar. 4, 2011) (same); Rodenhurst v. Bank of Am., 2011 WL 768674 (D. Haw. Feb. 23, 2011) (same). Claims of aiding and abetting similarly involve derivative claims. See Chung v. McCabe Hamilton & Renny Co., 109 Haw. 520, 531, 128 P.3d 833, 844 (2006). Because Cavaco's civil conspiracy and aiding and abetting claims are based on her fraud claim, and because her fraud claims fail, the civil conspiracy and aiding and abetting claims also fail.

G. Count 8--Injunctive Relief.

Count 8 seeks to enjoin Defendants from conducting a foreclosure sale of Cavaco's property. Cavaco asserts that HSBC is not entitled to foreclose on Cavaco's property because HSBC does not hold Cavaco's note. See First Amended Complaint ¶ 87. A claim for "injunctive relief" standing alone is not a valid cause of action. See Phillips v. Bank of Am., 2011 WL 240813, *4 (D. Haw. Jan. 21, 2011). Even if a claim for "injunctive relief" existed, the claim would fail. HSBC has submitted admissible evidence that Cavaco's orginal note is in the possession of HSBC's third-party custodian, Wells Fargo Bank, N.A. See

Declaration of Justin Wilson ¶ 3, Feb. 23, 2011, ECF No. 28.
Because Cavaco fails to raise a genuine issue of fact as to
whether HSBC actually holds her note, Defendants would be
entitled to summary judgment on this "claim."

H.   Count 9--Restrictions on the Mortgage.

Count 9 alleges that the HSBC has a "pooling agreement"
that imposes rules and restrictions on Cavaco not present in the
note and mortgage.  Arguing that she did not agree to the
"pooling agreement," Cavaco claims that the restrictions render
the note and mortgage unenforceable.

Defendants seek summary judgment on this claim, noting
that any "pooling agreement," as a matter of law, does not and
cannot modify Cavaco's rights under the terms of her note and
mortgage.  Cavaco does not oppose this argument or provide
evidence raising a genuine issue of fact as to whether a "pooling
agreement" modifies the terms of her note and mortgage.
Accordingly, summary judgment is granted in favor of Defendants
on this claim.

I.   Count 10--Wrongful Conversion of Loan.

Count 10 of the First Amended Complaint asserts that
the lenders have wrongfully converted the loan through
"securitization," rendering it void and unenforceable.
"Conversion is the wrongful exercise of dominion over the
property of another."  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d

590, 601 (9th Cir. 2010) (interpreting California law).  This court has ruled that, under Hawaii law, the elements of conversion are: "(1) [a] taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand."  BlueEarth BioFuels, LLC v. Hawaiian Elec. Co., 2011 WL 563766, *15 (D. Haw. Feb. 8, 2001) (quoting Tsuru v. Bayer, 25 Haw. 693, 1920 WL 830, *2 (Haw. Terr. Dec. 18, 1920)).

Count 10 alleges a wrongful conversion based on the sale of the loan to HSBC and HSBC's agreement with its servicing agent concerning the loan.  Cavaco's conversion claim fails because it simply does not involve a taking from Cavaco without her consent.  Accordingly, summary judgement is granted in favor of Defendants on Count 10.

J.    Count 11--Tolling of TILA's limitation period.

Count 11 asserts that Defendants fraudulently concealed and misrepresented the terms of Cavaco's note and mortgage such that TILA's limitation period should be tolled.  See First Amended Complaint ¶¶ 110-11.  As discussed above with respect to Counts 1 and 2, Cavaco has not demonstrated that equitable tolling applies.  Accordingly, for the reasons set forth above, summary judgment is granted in favor of Defendants on Count 11.

V.      <u>CONCLUSION.</u>

Except with respect to the TILA rescission claim asserted in Count 1, summary judgment is granted in Defendant's favor.  With respect to the TILA rescission claim asserted in Count 1, the court orders the parties to immediately meet and confer about how this count should proceed in light of Cavaco's ability or inability to unwind the transaction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 25, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>Cavaco v. Mortgage Electronic Registration Systems, Inc.</u>, Civil No. 09-00586 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGEMENT